UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANIA IRALA MALDONADO,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, *et al.*,<br>Respondents. | Case No. 1:26-cv-03855 (VC)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. Nos. 1, 8 |

Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner Tania Irala Maldonado was re-detained and has not been provided an opportunity for a bond hearing. This matter is before the Court on Petitioner's writ of habeas corpus and motion for a temporary restraining order. Dkt. Nos. 1, 8. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus and resolves her motion for a temporary restraining order as moot.[1]

## I. BACKGROUND

Petitioner is a native of Mexico and entered the United States on August 1, 1992 at the San Ysidro Port of Entry in California where she was processed by immigration authorities and released. Dkt. No. 1 ¶¶ 1–2; Dkt. No. 5-1 at 3. Following her entry into the United States, Petitioner began living in San Diego, California, where she owns a home. Dkt. No. 1 ¶ 3.

[1] Petitioner submitted the instant petition without a request for emergency relief, which the Court set a briefing schedule on. *See* Dkt. No. No. 3. Following the conclusion of briefing on the petition, Petitioner filed a motion for temporary restraining order seeking the same relief requested in the petition, and raising no new facts justifying the need for expedited relief.

Records submitted by Respondents indicate that Petitioner was served with a Notice to Appear for removal proceedings nineteen years after her initial entry into the United States on April 2, 2011. Dkt. No. 5-1 at 3. These removal proceedings were administratively closed in 2013. Dkt. No. 1 ¶ 3. On May 29, 2025, The Department of Homeland Security ("DHS") moved to reopen Petitioner's removal proceedings, and she was ordered removed *in absentia* three months later on July 16, 2026. Dkt. No. 5-2 at 1.

Petitioner was taken into custody on December 29, 2025 while attending an appointment at the San Diego ICE/ERO Office purportedly based on the *in absentia* removal order. Dkt. No. 5-1 at 2; Dkt. No. 1 ¶ 6. Following her arrest, and while in custody, Petitioner successfully moved to reopen her removal proceedings. Dkt. No. 5-3 at 1; Dkt. No. 1. Following the reopening, Petitioner also filed an application for asylum and application for adjustment of status based on a pending Violence Against Women Act ("VAWA") petition. Dkt. No. 1 ¶¶ 1, 7. Based on the record before the Court, it appears Petitioner has had one hearing before the immigration court since her proceedings were reopened, but has not had a hearing since. *See* Dkt. No. 1 ¶ 8. The Executive Office of Immigration Review docket reflects that her next hearing is set for July 17, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation.

## II. DISCUSSION

Petitioner argues that her nearly seven-month detention during the pendency of her removal proceedings without an opportunity for release on bond, or justification for her continued detention, violates her substantive and procedural due process rights. Dkt. No. 1 ¶¶ 37–45. In opposition, Respondents argue that "Petitioner's detention is lawful pursuant to the mandatory detention statute 8 U.S.C. § 1225(b)(2)." Dkt. No. 5 at 1. Because Petitioner's procedural due process claim affords her the relief to which she is entitled—namely release from custody—the Court need not address her substantive due process claim.

### A. Petitioner May Not Be Mandatorily Detained Under 8 U.S. § 1225(b)(2).

The Court first addresses whether § 1225(b)(2) controls Petitioner's detention. "Where an alien falls within this statutory scheme can affect whether [her] detention is mandatory or

discretionary, as well as the kind of review process available to [her] if [s]he wishes to contest the necessity of [her] detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Petitioner argues that her detention is governed by 8 U.S.C. § 1226(a), rather than § 1225(b)(2).[2] Dkt. No. 6 at 4. Petitioner is correct.

Application of § 1225(b)(2) to Petitioner is inconsistent with the Government's prior actions with respect to her initial parole into the United States: she was released from initial detention in 1992, mailed a notice to appear nineteen years later, and allowed to live at liberty in the United States while her removal proceedings were adjudicated. *See* Dkt. No. 5-1 at 2–3; Dkt. No. 1 ¶ 4. Courts in this district—and indeed, throughout the United States—have a rejected the Government's attempt to recategorize noncitizens as subject to §1225(b)(2) who were formerly released into the United States during the pendency of their removal proceedings. *See, e.g.*, *Bautista Villanueva v. Bondi*, No. 25-CV-4152-ABA, 2026 WL 100595, at *1 (D. Md. Jan. 14, 2026) (collecting cases); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *7 (N.D. Cal. Sept. 12, 2025); *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025). For the same reasons explained in many prior cases, the Court rejects the Government's recent application of § 1225(b)(2) to Petitioner, finding that her status as a person who was previously released from immigration custody and has been living in this country for more than three decades counsels against this expanded view of § 1225(b)(2). *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By

---

[2] The Court also notes that 8 U.S.C § 1231(a) would not have justified Petitioner's detention at the time of her arrest in 2025, even though an *in absentia* removal order was in place. Under § 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). The Ninth Circuit has held that an *in absentia* removal order becomes final either 180 days from the date the *in absentia* order is issued, or if a timely motion to reopen is filed and denied, then the date the Board of Immigration Appeals affirms the denial of the motion to reopen. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021). At the time of her arrest, Petitioner was still within the 180-day window to reopen her removal proceedings. *See* Dkt. No. 5-2 at 1 (showing removal order entered on July 16, 2025—166 days before Petitioner was arrested). Thus, no final order of removal was in place, and § 1231(a) did not mandate detention.

subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified))

**B. Petitioner's Re-Detention Violated Due Process.**

As Respondents have cited no lawful authority justifying Petitioner's continued detention without any opportunity for review of her custody status, the Court next turns to her due process claim. Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Liberty Interest**

The record before the Court indicates that immigration authorities released Petitioner when she first entered the United States in 1992 and permitted her to live at liberty for over three decades. Since then, Petitioner has developed ties in the community—she works, owns a home, and married a United States citizen. *See* Dkt. No. 1 ¶¶ 1–3. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482). As such, the Government's election to release Petitioner provided her with a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Olivero*, 2026 WL 1162724, at *4; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal.

2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-CV-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.").

### 2. *Mathews* Factors

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for almost seven years. In the intervening years she has developed ties in her community, working, owning property, and getting married. Dkt. No. 1 ¶¶1–3. "[Her] detention denies [her] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Though records submitted by Respondents indicate that her arrest was based on her *in absentia* removal order in effect at the time, that order was not final at the time of her arrest, and nothing in the record indicates that an assessment of Petitioner's dangerousness or flight risk was

made prior to her detention. *See Cui*, 13 F.4th at 996. Indeed, Respondents have not even made that argument in opposition. Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id*. at 1094. If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner Tania Irala Maldonado from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner poses a flight risk or a danger to the community if not detained.

4. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: July 17, 2026

VINCE CHHABRIA
United States District Judge